Filed 4/28/22  P. v. Guerrero CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B312851 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA097537) |
| v. | |
| DAVID PAUL GUERRERO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Allen J. Webster, Judge.  Affirmed as modified.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel Chang and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

_____

David Paul Guerrero, who was convicted of second degree murder, appeals from an order denying his petition for resentencing under Penal Code section 1170.95.[1]  He contends the trial court applied an incorrect standard of proof at the hearing on his petition under section 1170.95, subdivision (d)(3).  For the reasons explained below, we affirm the order denying his petition.  The parties ask this court to correct the judgment to reflect the accurate amounts of certain assessments imposed on Guerrero's conviction.  We order the trial court to correct the judgment, as specified below.

## BACKGROUND

### I.     Charges, First Trial, and Direct Appeal

In August 2008, an information charged Guerrero and two codefendants (Joe Toledo and Jose Enciso) with the murder (§ 187, subd. (a)) of Darryl White, committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)).  The information also alleged that, in the commission of the murder, codefendant Toledo personally and intentionally discharged a handgun, and a principal personally and intentionally discharged a handgun. (§ 12022.53, subds. (b)-(e).)

In October 2009, a jury found Guerrero and his two codefendants guilty of first degree murder and found true the gang and firearm enhancements alleged in the information.  Each defendant was sentenced to 50 years to life in prison.  Guerrero and his codefendants appealed, and we reversed the convictions for evidentiary error. (*People v. Toledo* (Oct. 5, 2011, B219800) [nonpub. opn.].)

_____

[1] Further statutory references are to the Penal Code.

## II.    Retrial, Appeal, and Modification of Judgment

Guerrero and his codefendants were retried in 2014.  In the present appeal, Guerrero and the Attorney General take their summary of the facts and circumstances of the charged offense, as presented at the retrial, from our January 31, 2017 opinion in Guerrero's appeal after retrial. (*People v. Guerrero* (Jan. 31, 2017, B259164) [nonpub. opn.].)  We quote from the background section of that opinion here:

"Several street gangs claim overlapping territory in Compton, California, including the Compton Varrio 70 (CV70) and Leuders Park Piru (Leuders Park) gangs, which maintain a longstanding feud.  Guerrero and his codefendants were members of CV70.  White [the murder victim] was a member of the Natural Born Players (NBP), a group associated with Leuders Park.

"On the morning of November 27, 2002, the day before Thanksgiving, White and his cousin, Brandon Buckhalter, spray painted 'NBP' on some walls and a street sign at the intersection of San Vicente Street and Bradfield Avenue in Compton.  White also painted over graffiti referring to CV70.

"Guerrero was outside his home with Toledo, Enciso, and Marcos Contreras, also a CV70 member.  Guerrero went inside, perhaps to use the restroom.  While Guerrero was inside, Toledo learned of White and Buckhalter defacing the CV70 graffiti and hurried inside the house to get a revolver from Guerrero.  Guerrero followed Toledo out.  Guerrero, Enciso, and unidentified backseat passengers then approached White and Buckhalter on Bradfield in a blue Chevy Tahoe driven by Enciso.  When Enciso brandished a chrome handgun, White and Buckhalter ran away from the Tahoe and turned onto Palmer Street.  Guerrero and his

companions pursued but temporarily lost sight of the NBP members while turning the Tahoe around. A neighbor driving on Bradfield saw two Black men argue with the occupants of the Tahoe, and saw a gun in the hand of the Tahoe's front passenger, whose arm was hanging out the window. He saw the Tahoe turn around and pass him in the direction the two men were running, and then turn onto Palmer.

"Buckhalter and White ran to a friend's house, where Buckhalter talked with the friend on the porch. White left the house and went back down the street and around the corner. Then White came running back around the corner chased by Toledo and Contreras. White ran into the yard of a neighboring house, closely pursued on foot by Toledo and Contreras. A woman who lived a few houses down from the friend's house heard one of the pursuers shout, 'Yeah, mother fucker. You think you got away, but we got you now.' Toledo and Contreras took different routes to the yard at 1813 East Palmer Street, cornered White, and shot him five times with two guns, a revolver and a semiautomatic, twice through the heart. Then they ran back to the Tahoe and were driven away. White died at the scene.

"The police investigation spanned several years.

"Two months after the shooting . . . Guerrero's brother[] was stopped in his vehicle. Under a seat, police discovered a semiautomatic handgun that was later determined to have ejected the semiautomatic cartridge casings recovered at the scene of the White shooting.

"Guerrero was arrested three years after the murder, on November 9, 2005, along with Enciso. Toledo was arrested two months after that.

"In 2006, Melina Rodriguez, Guerrero's girlfriend, was arrested for drug possession. She told police that on an unspecified day when an unidentified 'Black guy got killed,' she was living with Guerrero near the intersection of San Vicente and Bradfield, where White and Buckhalter were seen painting graffiti. She was in the house with Guerrero while Enciso, Toledo, and Contreras were outside. Toledo rushed in and told Guerrero to give him a gun. Guerrero gave Toledo a chrome revolver and then followed him outside. She could not otherwise identify the gun. Rodriguez heard shots about five minutes later, and later learned that a Black man had been killed. In a subsequent interview, Rodriguez told police she thought that around the time of the shooting, Enciso had a blue Tahoe—the same kind of car that had pursued White and Buckhalter—but she said . . . Guerrero['s brother] also had a blue Tahoe around the same time. Rodriguez recanted her statements at the preliminary hearing and at trial, but recorded clips of the interviews were played for the jury.

"Also in 2006, police detained . . . Guerrero['s brother] as he emerged from the house of Sabrina Lewis, his girlfriend, with a rifle bag and duffel bags. A search of the bags and Lewis's residence recovered eight guns, police vest–penetrating ammunition, and a CD recording of a police interview with Toledo. During a search of another Lewis residence, also in 2006, police found a preliminary hearing transcript of Buckhalter's testimony in a separate case.

"Buckhalter identified Toledo and Contreras as the shooters and Enciso and Guerrero as the Tahoe's driver and passenger, respectively.

"[¶] . . . [¶]

5

"At trial, Sheriff's Detectives Peter Hecht and Brian Steinwand, the prosecution's gang experts, testified that a task force was created in 2005 to solve crimes associated with gangs in Compton, and as part of that task force, they were assigned to CV70. Hecht testified CV70's primary activities were tagging, robbery, illegal substance dealing, car theft, and murder. He testified there was a longstanding feud between CV70 and Leuders Park, beginning with an incident in 1998 in which a CV70 member shot and injured a Leuders Park member and was himself shot in the face, prompting retaliatory killings of the Leuders Park member and the CV70 member's father in the subsequent weeks. Another incident in 2001 contributed to the gang rivalry, in which Ricky Jimenez, the sister of a CV70 gang member, was murdered.

"Hecht testified that gangs demand respect and announce their geographical authority with graffiti. In the gang culture, crossing out a rival gang's graffiti is a sign of disrespect and requires retaliation. A gang member loses respect by failing to retaliate when a gang's authority is challenged, and can be killed for cooperating with law enforcement. Hecht opined that the White murder benefitted CV70 by increasing its reputation for violence and intimidating the community, thereby discouraging community members from assisting law enforcement in its investigations of CV70 activities.

"Guerrero's codefendants both presented alibi witnesses, while Guerrero presented no defense witnesses." (*People v. Guerrero, supra*, B259164, pp. 2-5.)

At the retrial, the prosecutor argued to the jury that Guerrero either (1) directly aided and abetted the first degree premeditated murder or (2) aided and abetted an assault with a

firearm and was guilty of first degree premeditated murder under the natural and probable consequences doctrine. The trial court instructed the jury on theories of direct aiding and abetting a murder and aiding and abetting under the natural and probable consequences doctrine. (CALCRIM No. 400 [Aiding and Abetting: General Principles]; CALCRIM No. 401 [Aiding and Abetting: Intended Crimes]; and CALCRIM No. 403 [Natural and Probable Consequences (Only Non-Target Offense Charged)].)[2]

At the retrial, the jury found Guerrero and his codefendants guilty of first degree premeditated murder and found true the gang and firearm enhancement allegations. The trial court again sentenced Guerrero to 50 years to life in prison. (*People v. Guerrero, supra*, B259164, p. 6.)

Guerrero appealed, contending the trial court erred in admitting certain evidence and in instructing the jury on aider and abettor liability. We rejected his claim of evidentiary error but agreed the trial court erroneously instructed on the natural and probable consequences doctrine as it applies to aider and abettor liability. (*People v. Guerrero, supra*, B259164, p. 2.) We explained that, as our Supreme Court held in *People v. Chiu* (2014) 59 Cal.4th 155, 166, an aider and abettor may be convicted of first degree premeditated murder as a direct aider and abettor of the murder, but not as an aider and abettor under the natural and probable consequences doctrine. (*Guerrero*, at p. 14.) As the record did not establish beyond a reasonable doubt that the jury

_____

[2] These jury instructions were included in the appellate record in Guerrero's appeal from the trial court's August 19, 2019 summary denial of his section 1170.95 petition, discussed below. On this court's own motion, we take judicial notice of the appellate record in that appeal, case number B301518.

based its verdict on a theory that Guerrero directly aided and abetted the murder, as opposed to a theory that he aided and abetted under the natural and probable consequences doctrine, we concluded the error was not harmless and reversed Guerrero's conviction for first degree murder. (*Id*. at p. 16.) We reasoned, "however strong the evidence may have been that Guerrero directly aided and abetted White's murder, the record does not establish beyond a reasonable doubt that the jury's verdict was based on that evidence and theory." (*Id*. at pp. 15-16.)

The prosecution had the option of retrying Guerrero for first degree murder or accepting a modification of the judgment to reflect a conviction for second degree murder and resentencing Guerrero accordingly. (*People v. Guerrero*, *supra*, B259164, pp. 16, 22.) The prosecution chose the second option. As reflected in the September 21, 2017 abstract of judgment, Guerrero was resentenced to 40 years to life: 15 years to life for second degree murder, plus 25 years to life for the firearm enhancement under section 12022.53, subdivisions (d) and (e)(1).[3]

## III. Section 1170.95 Petition and Appeal From Summary Denial of Petition

On August 9, 2019, Guerrero, representing himself, filed a form petition for resentencing under section 1170.95, a statute which permits a person convicted of felony murder or murder under a natural and probable consequences theory to petition the court to have the murder conviction vacated and to be resentenced, if the person could not be convicted of murder today in light of amendments to sections 188 and 189. Senate Bill No.

---

[3] As set forth below, the abstract of judgment incorrectly lists the amounts of certain assessments imposed on Guerrero's conviction.

8

1437, which added section 1170.95 and amended sections 188 and 189, was enacted in 2018 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill No. 1437 (2017-2018 Reg. Sess.) Stats. 2018, ch. 1015, § 1(f), p. 6674; §§ 188, subd. (a)(3) & 189, subd. (e).)

In his form petition, Guerrero checked boxes stating, in pertinent part, that he was convicted of second degree murder under the natural and probable consequences doctrine or under the second degree felony murder doctrine and he could not now be convicted of murder because of changes to sections 188 and 189, effective January 1, 2019. Guerrero also checked the box requesting the trial court appoint counsel to represent him in connection with his petition.

On August 19, 2019, the trial court issued a minute order, denying Guerrero's petition for resentencing without appointing counsel for him or holding a hearing. In the minute order, the court summarized the circumstances of the crime and set forth the facts supporting the court's conclusion Guerrero cannot make a prima facie showing he is eligible for resentencing under section 1170.95 because "he was convicted by a jury as a direct aider and abettor to the White murder," and "he was not prosecuted under either a felony murder or a natural and probable consequence[s] theory of culpability."[4]

---

[4] The minute order does not specify which portions of the record of conviction or court file the trial court reviewed in ruling on the petition.

Guerrero appealed from the summary denial of his section 1170.95 petition.  He contended, the Attorney General conceded, and we agreed the trial court erred in denying his petition for resentencing without appointing counsel for him and allowing briefing by the parties under section 1170.95, subdivision (c).  We remanded the matter for further proceedings.  (*People v. Guerrero* (Oct. 28, 2020, B301518) [nonpub. opn.], pp. 2, 8.)

Section 1170.95 provides that if, after briefing, "the petitioner makes a prima facie showing that [he or she] is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)  At all times relevant to the proceedings below, section 1170.95, subdivision (d)(3) provided, in pertinent part: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.........The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (Former § 1170.95, subd. (d)(3).)

IV.   **Briefing Under Section 1170.95, Subdivision (c) and Hearing Under Section 1170.95, Subdivision (d)(3)**

Upon remand, the district attorney filed a response to Guerrero's petition under section 1170.95, subdivision (c).  In the brief, the district attorney quoted the background section of our January 31, 2017 opinion in Guerrero's appeal after retrial, as the statement of the facts and circumstances of the charged offense.  The district attorney argued, because the evidence presented at the retrial demonstrates Guerrero *could be* convicted of murder under a direct aiding and abetting theory, he is ineligible for resentencing under section 1170.95, and the trial

10

court need not issue an order to show cause under subdivision (c) and hold a hearing under subdivision (d)(3).

Guerrero, now represented by counsel, filed a reply brief in support of his section 1170.95 petition. Like the district attorney, he relied on our January 31, 2017 opinion for a recitation of the facts in this case.[5] He asserted: A "theoretical possibility" that the jury found him guilty of murder under a direct aiding and abetting theory "does not make him ineligible for relief" under section 1170.95 at this stage of the proceedings. He argued he had made a prima facie showing of entitlement to relief under section 1170.95, subdivision (c), and the district attorney would not be able "to prove beyond a reasonable doubt that [he] was [the actual] killer or that he harbored a specific intent to kill and that he aided and abetted in killing."

After briefing, the district attorney conceded Guerrero made a prima facie case of entitlement to relief, and the trial court should issue an order to show cause and hold a hearing. The court set the matter for a hearing.

At the May 25, 2021 hearing, neither side presented new evidence. The prosecutor argued there is "overwhelming evidence" to prove beyond a reasonable doubt Guerrero "was a direct aider and abettor with intent to kill," and he therefore is not entitled to relief under section 1170.95. The prosecutor pointed out that the trial court "sits as the finder of fact" at the hearing under section 1170.95, subdivision (d)(3). Guerrero's counsel argued Guerrero "was simply a passenger in a vehicle,"

_____

[5] In his reply brief in support of his petition, Guerrero also challenged the credibility of Melina Rodriguez's testimony at the retrial, citing to pages of the trial transcript that he did not present to the trial court or include in the record on appeal.

11

and there is insufficient evidence to prove beyond a reasonable doubt he aided and abetted a murder rather than aided and abetted an assault with a firearm.

During the hearing, the trial court noted it had presided at Guerrero's trial and retrial. The court provided an oral summary of the facts and circumstances of White's killing, including the evidence indicating (1) Guerrero provided Toledo with the gun that Toledo used in the shooting, and (2) Guerrero waited in the car and left with the shooters after White's killing. The court pointed out that in our January 31, 2017 opinion in Guerrero's appeal after retrial, we gave the prosecution the option of trying Guerrero for a third time for first degree murder, which indicates a jury "could have found him guilty of first degree murder."

The trial court commented, in pertinent part: "This was basically a gang retaliation, a rival gang. And I think the motivation for this case . . . was you know, a gang thing, basically defacing gang graffiti. And it just seems to the court that it was somewhat of a concerted, organized effort, and a common purpose to kill the people who basically obliterated CV70's graffiti. [¶] So it seems to the court that this is, as far as the court is concerned, a classic aiding and abetting, encouragement, instigating, supporting by going to the scene, waiting there. And then once the killing occurred, then leaving, going back to wherever Mr. Toledo and them [*sic*] lived. It just seems to the court that when you put everything together, this is a classic, textbook example of aiding and abetting."

The court further commented: "[T]here is no inescapable conclusion, other than the fact that Mr. Guerrero aided and abetted, basically, in the killing of Mr. White. And as far as the court is concerned, even with the amendment to [sections] 188

12

and 189, he could be convicted of first degree murder under aiding and abetting." The court found Guerrero is not entitled to relief under section 1170.95 and denied his petition.

Defense counsel reiterated: "Th[e] aiding and abetting and intent could [have been] for assault with a deadly weapon, as the Court of Appeal[] acknowledged, just as easily as it could have been for premeditated murder. And it's the People's burden to prove beyond a reasonable doubt that it wasn't aiding and abetting an assault." After further discussion of the evidence, the trial court rejected this theory and stated: "And it just seems to the court the inescapable conclusion is that this just basically easily could be an aiding and abetting case. And the Court [of Appeal] even indicated in this particular case . . . that it could easily have been a first degree [murder] aiding and abetting case. They said that. The facts in there say that."

On May 25, 2021, the same day as the hearing, the trial court issued a minute order denying Guerrero's section 1170.95 petition. The court did not set forth its reasons for denying the petition in the minute order.

## DISCUSSION

## I.    Denial of Section 1170.95 Petition

As set forth above, on May 25, 2021, when the trial court held the hearing on Guerrero's petition, section 1170.95, subdivision (d)(3) stated, in pertinent part: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." Senate Bill No. 775, which amended section 1170.95 effective January 1, 2022, amended the above-quoted sentence of subdivision (d)(3) to read: "At the hearing to determine whether the petitioner is

13

entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (Sen. Bill No. 775 (2021-2022 Reg. Sess.) Stats. 2021, ch. 551, § 2.) Senate Bill No. 775, among other things, also added the following sentence to subdivision (d)(3): "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (Sen. Bill No. 775 (2021-2022 Reg. Sess.) Stats. 2021, ch. 551, § 2.)

Guerrero contends the trial court applied "an erroneous legal standard" when it "concluded that because substantial evidence would support a hypothetical juror's conclusion that [he] directly aided and abetted the direct perpetrator's commission of murder, [he] was ineligible for . . . resentencing consideration" under section 1170.95. In support of this contention, he asserts "the court did not say that it was evaluating the evidence as an independent factfinder and it did not articulate an analytic process in which, as the factfinder, it had concluded there was sufficient record evidence to prove beyond a reasonable doubt that [Guerrero] was acting with the specific intent to directly aid and abet a murder rather than some less than murderously intended assault."

The Attorney General argues that the parties' arguments and the trial court's comments at the hearing demonstrate the trial court made the requisite factual findings under the appropriate standard to properly deny Guerrero's petition. The Attorney General also argues if there was error, it was harmless.

14

As Guerrero argues, the trial court made some comments at the hearing which indicate it applied an incorrect standard of proof: that there was sufficient evidence in the record such that the jury *could have* found Guerrero guilty of murder under a direct aiding and abetting theory. We agree with the Attorney General, however, that to the extent the trial court applied an incorrect standard—which had not been clarified in the law at the time of the hearing—any error was harmless because it is not reasonably probable the outcome would have been more favorable to Guerrero if the court had applied the standard of proof now set forth in section 1170.95, subdivision (d)(3), as amended by Senate Bill No. 775. (See *People v. Lewis* (2021) 11 Cal.5th 952, 973-974 [denial of § 1170.95 petition evaluated under the standard of prejudice described in *People v. Watson* (1956) 46 Cal.2d 818].) Other statements by the court made absolutely clear how the court would have ruled applying the now-codified higher standard of proof (to the extent the court applied an incorrect standard). The court found the circumstances of the killing constituted a concerted, organized effort, and a common purpose among those present in the vehicle and on foot to kill the rival gang members who defaced the graffiti. The court also found Guerrero encouraged, instigated, and supported the killing by providing a gun, accompanying the shooters to the scene, waiting in the vehicle, and leaving with the shooters after the killing. And, although the court did not use the words "reasonable doubt," the court indicated it found beyond a reasonable doubt that Guerrero directly aided and abetted the murder: the court noted it had presided at Guerrero's trial and retrial, and there was only one conclusion that could be drawn from the evidence—

15

the "inescapable conclusion" that "Guerrero aided and abetted, basically, in the killing of Mr. White."

"We review the trial court's determination at the section 1170.95, subdivision (d)(3) hearing for substantial evidence." (*People v. Garrison* (2021) 73 Cal.App.5th 735, 747.) Guerrero does not argue there is insufficient evidence supporting a finding that he directly aided and abetted the murder (made under the correct standard of proof).

Guerrero makes an additional argument, which he concedes finds no support in case law: that courts should apply an "alternative theory instructional error analysis" to a section 1170.95 petition when the parties present no new evidence at the subdivision (d)(3) hearing. This type of analysis applies when a trial court instructs a jury on a legally correct theory and a legally incorrect theory. The reviewing court must reverse based on such instructional error unless the reviewing court concludes, beyond a reasonable doubt, that the jury based its verdict on the correct theory. (See *People v. Aledamat* (2019) 8 Cal.5th 1, 12-13.) "The question [under this analysis] is not whether we believe it clear beyond a reasonable doubt that the defendant is guilty under the legally correct theory, but whether we can say, beyond a reasonable doubt, that the legally incorrect jury instruction did not taint the actual jury verdict." (*People v. Baratang* (2020) 56 Cal.App.5th 252, 263.)

There is no language in section 1170.95, as amended by Senate Bill No. 775, indicating an alternative theory instructional error analysis should apply to a section 1170.95 petition. As set forth above, section 1170.95, subdivision (d)(3) now states, in pertinent part: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof

16

shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." The question at a subdivision (d)(3) hearing is whether the prosecution can prove the crime beyond a reasonable doubt under the law today, based on the record alone or based on new evidence, not whether the prosecution can prove beyond a reasonable doubt which theory was the basis for the jury's verdict. Moreover, we reject Guerrero's assertion that alternative theory instructional error analysis should apply where the parties introduce no new evidence at the hearing, and a different standard should apply where the parties choose to introduce new evidence. Nothing in the statute supports such a construction.

For the reasons discussed, we have no cause to reverse the trial court's order denying Guerrero's section 1170.95 petition.

## II. Correction of Judgment to Reflect Accurate Amount of Assessments

Guerrero contends, and the Attorney General concedes, the September 21, 2017 abstract of judgment incorrectly lists the criminal conviction assessment imposed under Government Code section 70373 as $50 instead of $30. (Gov. Code, § 70373, subd. (a)(1) ["The assessment shall be imposed in the amount of thirty dollars ($30) for each misdemeanor or felony"].) We may correct an unauthorized sentence, including improperly imposed assessments, at any time it is brought to our attention, and we do so here. (See *People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6; *People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1530.)

The Attorney General notes in the respondent's brief that the September 21, 2017 abstract of judgment also incorrectly lists

17

the court operations assessment imposed under section 1465.8 as $30 instead of 40 dollars. (§ 1465.8, subd. (a)(1) ["an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense"].) Guerrero did not respond to this issue in his reply brief. Because it is an unauthorized assessment, we order the trial court to correct the judgment, as specified below.

## DISPOSITION

The May 25, 2021 order denying the section 1170.95 petition is affirmed. The trial court is ordered to correct the judgment to reflect imposition of a $30 criminal conviction assessment under Government Code section 70373 and imposition of a $40 court operations assessment under Penal Code section 1465.8. As so modified, the judgment is affirmed. The clerk of the superior court is directed to prepare an amended abstract of judgment and to forward it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.          CRANDALL, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18